JPL:KTF/BLW/DIB
F. #2026R00188

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
*    JUNE  24, 2026    *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

MALIK BEASLEY,
      also known as "Beas," "Bease,"
      "MB" and "5,"
WILLIAM BROWN,
      also known as "Willo,"
EDWARD DAVIS,
      also known as "Ed," "ED"
      and "E Davis,"
ROBERT GORODETSKY,
      also known as "Rob,"
ERNESTO PLASCENCIA,
      also known as "Ernie," "Erny,"
      "Ernie P" and "Erny P," and
PAOLO ZAMORANO,
      also known as "PZ,"

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. ____26-CR-190____
(T. 18, U.S.C., §§ 224, 981(a)(1)(C),
982(a)(1), 982(b)(1), 1349, 1956(h), 2
and 3551 et seq.; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

Judge Ann M. Donnelly
Magistrate Judge Taryn A. Merkl

THE GRAND JURY CHARGES:

INTRODUCTION

    At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>The Defendants and Relevant Entities and Individuals</u>

    A.    <u>The Defendants</u>

        1.    The defendant MALIK BEASLEY, also known as "Beas," "Bease," "MB" and "5," was a resident of Georgia, Wisconsin and Michigan.  BEASLEY was a National Basketball Association ("NBA") player from approximately 2016 through approximately 2025.

BEASLEY played on the Milwaukee Bucks during the 2023-2024 NBA season. Although BEASLEY earned tens of millions of dollars during his NBA career, BEASLEY had also accumulated multi-million dollar gambling losses.

2. The defendant WILLIAM BROWN, also known as "Willo," was a resident of Nebraska.

3. The defendant EDWARD DAVIS, also known as "Ed," "ED" and "E Davis," was a resident of North Carolina. DAVIS played in the NBA from approximately 2010 through approximately 2022. DAVIS and the defendant MALIK BEASLEY were teammates on the Minnesota Timberwolves during the 2020-2021 NBA season and maintained a close relationship during the relevant period. In addition, DAVIS extended several loans to BEASLEY, causing BEASLEY to owe DAVIS money at various times during the relevant period.

4. The defendant ROBERT GORODETSKY, also known as "Rob," was a resident of Illinois.

5. The defendant ERNESTO PLASCENCIA, also known as "Ernie," "Erny," "Ernie P" and "Erny P," was a resident of California. PLASCENCIA maintained a friendship with, among others, the defendant EDWARD DAVIS, as well as multiple other former and current NBA players, during the relevant period.

6. The defendant PAOLO ZAMORANO, also known as "PZ," was a resident of, among other places, California. ZAMORANO played Division I Men's college basketball from approximately 2006 through approximately 2008. ZAMORANO was an NBA player agent for several years and represented the defendant EDWARD DAVIS at times while DAVIS was an NBA player.

2

B.    The NBA and the Betting Companies

7.    The NBA was a professional basketball league in North America. Among others, NBA teams included the Brooklyn Nets, Charlotte Hornets, Cleveland Cavaliers, Los Angeles Clippers, Milwaukee Bucks and Minnesota Timberwolves. The NBA maintained codes of conduct applicable to its players, coaches and management that prohibited, among other things, wagering in connection with NBA games or providing non-public information relating to NBA games to others. Such codes of conduct also required NBA players, coaches and management to provide their best services and loyalty to their teams. In addition, the Collective Bargaining Agreement and Uniform Player Contract, which applied to all NBA players, including the defendant MALIK BEASLEY, required players to "refrain from gambling on NBA games, point shaving or other attempts to fix the score or outcome of an NBA game, or providing confidential team or league information to individuals involved in gambling."

8.    Betting Company 1, Betting Company 2 and Betting Company 3, entities the identities of which are known to the Grand Jury, were licensed gambling companies operating in the United States that offered sports betting services (collectively, and together with other online sportsbooks and retail sportsbooks, the "Betting Companies"). The Betting Companies offered sports betting services relating to, among other things, NBA games and individual players' statistical performances in NBA games. Since approximately 2021, Betting Company 1 and Betting Company 2 have been the co-official sports betting partners of the NBA.

C.    Other Relevant Individuals

9.    Co-Conspirator 1, an individual whose identity is known to the Grand Jury, was a resident of Brooklyn, New York. Co-Conspirator 1 engaged in text communications

3

in furtherance of the scheme, among other things, while located within the Eastern District of New York.

10.    Co-Conspirator 2, an individual whose identity is known to the Grand Jury, was a resident of Arizona.

11.    Co-Conspirator 3, an individual whose identity is known to the Grand Jury, was a resident of Arizona.

12.    Co-Conspirator 4, an individual whose identity is known to the Grand Jury, was a resident of Colorado.    Co-Conspirator 4 played Division I Men's college basketball from approximately 2008 through approximately 2010 for the defendant PAOLO ZAMORANO's alma mater.    Co-Conspirator 4 currently serves as an assistant coach for a Division II Men's college basketball team.

II.    Background on Sports Betting

22.    In or about 1992, following several high-profile sports-betting scandals, the United States Congress passed the federal Professional and Amateur Sports Protection Act ("PASPA"), 28 U.S.C. § 3702, which banned all but four states from sponsoring, authorizing, operating or regulating sports wagering.    The four excepted states—Nevada, Oregon, Delaware and Montana—had existing sports wagering regimes that PASPA grandfathered in.

23.    In or about 2018, following years of litigation between the State of New Jersey—which desired to legalize sports betting—and several major American professional and college sports leagues, the United States Supreme Court struck down PASPA as unconstitutional. In the ensuing years, sports betting, and particularly online sports betting, became legal in dozens of states.

4

24.    The Betting Companies operated online mobile applications, branded retail sportsbooks at various casinos nationwide, or both.   Online wagers made through the Betting Companies' online mobile applications were made pursuant to the Betting Companies' respective terms of use.   Wagers made at retail sportsbooks were made pursuant to the sportsbooks' house rules.   Among other things, the Betting Companies' terms of use and retail sportsbooks' house rules generally prohibited users from wagering in connection with sporting contests when the wagers were based on or the users had access to pre-release, confidential information or other non-public information.   The terms of use and house rules also prohibited individuals from using others to place wagers on their behalf, otherwise known as straw betting.

25.    Despite the recent widespread legalization of sports betting, unlicensed bookmakers or "bookies" also offered sports betting services to bettors.   Bookies frequently accepted bets on bespoke betting websites that allowed users to place various types of wagers on sporting contests based on publicly available betting lines.   Unlike legal sportsbooks, bookies typically "settled up" the bettors' wagers (i.e., received payment from and/or paid the bettors in connection with the wagers) offline, generally through cash, peer-to-peer payments or cryptocurrency transactions.

26.    A "proposition" or "prop" bet was a bet made regarding the occurrence or non-occurrence during a game of an event not directly affecting the game's outcome.   For example, a bettor might wager that a particular player would score more (referred to as betting the "over") or fewer (referred to as betting the "under") points than a certain number of points designated by the betting operator for a given game.   Prop bets took many forms.   For example, a bettor could place prop bets on the points, rebounds, assists, minutes played and/or three-pointers made by individual NBA players.

5

27.    A "money line" bet was a bet placed on a game's outcome (i.e., which team would win or lose the game).   Relatedly, a "point spread" or "spread" bet was a bet placed on the margin of victory or defeat in a given game.

28.    A "parlay" bet was a bet that was comprised of two or more individual bets (as opposed to a "single" or "straight" bet, which was comprised of one individual bet). For a bettor to win a parlay bet, each bet, or "leg," within the parlay bet had to be successful.

29.    A "betting line" or "line" was a number set by oddsmakers to represent the expected outcome of a particular event.   In the context of prop bets, a betting line was the number set by oddsmakers for a given outcome.   For example, an oddsmaker might set the betting line for a given player's points in a given game at 20.   Bettors would then have the choice to bet the "under" (i.e., that the player will score fewer than 20 points in the game), or the "over" (i.e., that the player will score more than 20 points).   Oddsmakers had proprietary processes for setting betting lines, but betting lines generally took into account all publicly known information relevant to a given bet.

III.    The Bribery and Fraudulent Wagering Scheme

30.    In or about and between December 2023 and April 2024, the defendants MALIK BEASLEY, WILLIAM BROWN, EDWARD DAVIS, ROBERT GORODETSKY, ERNESTO PLASCENCIA and PAOLO ZAMORANO, together with others, participated in a scheme to influence NBA games by bribery and to defraud the Betting Companies by providing, obtaining and using non-public information relating to such NBA games to place and cause others to place fraudulent sports wagers for profit, and to launder the proceeds thereof.

31.    The scheme involved multiple iterations of a similar pattern of conduct within a network of co-conspirators.   The defendant MALIK BEASLEY agreed with the

6

defendant EDWARD DAVIS (known to other co-conspirators as BEASLEY's "gatekeeper") in advance of certain NBA games to underperform, and at times overperform, relative to one or more of BEASLEY's statistics in those games.   DAVIS, the defendants WILLIAM BROWN, ROBERT GORODETSKY, ERNESTO PLASCENCIA and PAOLO ZAMORANO, along with Co-Conspirator 1 and other co-conspirators, subsequently used such non-public information relating to BEASLEY's intended performance to place fraudulent wagers conditioned on BEASLEY's performance in the games at issue, all with the intention of profiting off the scheme at the expense of the Betting Companies.

32.     The defendants and their co-conspirators generally placed and caused others to place fraudulent wagers through the Betting Companies' mobile applications and retail sportsbooks.   In doing so, the defendants and their co-conspirators made and caused others to make materially false and misleading statements and representations to the Betting Companies, and to omit to state one or more material facts which made what was represented under the circumstances misleading, including that the wagers were placed in accordance with the Betting Companies' terms and conditions and house rules prohibiting, among other things, wagering based on non-public information and straw betting.

33.     In addition, the fraudulent wagers were placed in connection with betting lines that generally did not reflect or account for the non-public information about the defendant MALIK BEASLEY known then by BEASLEY, the other defendants and their co-conspirators, rendering the wagers more profitable.   The Betting Companies would not have accepted bets or paid bettors for the successful wagers had they known that the bettors possessed such non-public information pertaining to BEASLEY or were placing the wagers at the direction of and for the

benefit of others.   In many instances, the defendants and their co-conspirators' fraudulent bets were successful and were paid out by the Betting Companies.

34.    In return for performance fixing, the defendant MALIK BEASLEY received bribes from the co-conspirators, typically by having BEASLEY's debts to the defendant EDWARD DAVIS reduced or paid off.   In doing so, BEASLEY, DAVIS and the defendants WILLIAM BROWN, ROBERT GORODETSKY, ERNESTO PLASCENCIA and PAOLO ZAMORANO, together with others, engaged in a scheme to defraud the Milwaukee Bucks and the NBA of honest and faithful services of BEASLEY through bribery.

35.    In furtherance of the scheme and to conceal the proceeds derived from it, the defendants and their co-conspirators also engaged in and caused others to engage in transactions between and among themselves and others acting on their behalf including peer-to-peer payment platform transfers, bank wires and cash exchanges.

36.    Examples of some of the influenced games, fraudulent wagers and laundering are set forth below.

A.    The January 26, 2024 Milwaukee Bucks-Cleveland Cavaliers Game

37.    On or about January 26, 2024, the Milwaukee Bucks played the Cleveland Cavaliers (the "January 26 Game").   Approximately one month prior to the game, on or about December 29, 2023, the defendants MALIK BEASLEY and EDWARD DAVIS communicated via text message:

| DAVIS: | Only way you can beat Vegas is sports betting.   Everything else they got the edge |
| BEASLEY: | Well yea my n[****] |
| BEASLEY: | Trying to find like 2k |
| BEASLEY: | I'll do my best to pay in full on 1st |

8

| | |
|---|---|
| DAVIS: | You got Snapchat? |
| BEASLEY: | Not really why |
| DAVIS: | Talk to you bout some shit on there |
| BEASLEY: | You can't do it here? |
| DAVIS: | Better to talk on there |
| DAVIS: | We can make some good money |

38.     On or about January 25, 2024, the day before the January 26 Game, the defendant MALIK BEASLEY discussed via text message whether he would underperform on overall points, three-point goals and/or rebounding.

39.     Prior to the January 26 Game, the defendant MALIK BEASLEY informed the defendant EDWARD DAVIS that BEASLEY intended to underperform with respect to rebounding in the game.   BEASLEY provided this information to DAVIS to obtain a promised bribe payment and for the purpose of enabling DAVIS and other co-conspirators to place wagers based on this non-public information.   DAVIS, in turn, disseminated the non-public information to multiple co-conspirators, including the defendants ROBERT GORODETSKY, ERNESTO PLASCENCIA and PAOLO ZAMORANO, to enable them to place fraudulent wagers.

40.     In the hours leading up to the January 26 Game, the defendants and their co-conspirators placed numerous fraudulent wagers totaling tens of thousands of dollars conditioned on the defendant MALIK BEASLEY's "under rebounds" prop bets.   For example:

(a)     At the direction of the defendant ROBERT GORODETSKY, Co-Conspirator 2 placed multiple bets on BEASLEY's under rebounds on Betting Company 1's mobile application totaling approximately $21,228, which profited approximately $14,013.08.

(b)    At the direction of the defendant PAOLO ZAMORANO, Co-Conspirator 4 placed at least one bet on BEASLEY's under rebounds on Betting Company 2's mobile application totaling approximately $2,500, which profited approximately $1,666.57.

(c)    At Co-Conspirator 1's direction, multiple bettors placed bets on BEASLEY's under rebounds on Betting Company 2's and Betting Company 3's mobile applications totaling more than approximately $10,000, which profited thousands of dollars.

41.    During the January 26 Game, the defendant MALIK BEASLEY played approximately 27 minutes, scored three points, and recorded one assist and three rebounds. BEASLEY's underperformance in rebounds for the game (three) relative to the betting line (approximately 3.5) rendered many of the co-conspirators' fraudulent wagers successful.

42.    Over the following days, the defendants and their co-conspirators discussed distributing, and distributed, the proceeds of the fraudulent wagers placed on the January 26 Game.

B.    The February 27, 2024 Milwaukee Bucks-Charlotte Hornets Game

43.    On or about February 27, 2024, the Milwaukee Bucks played the Charlotte Hornets (the "February 27 Game"). Prior to the game, the defendants and their co-conspirators texted about identifying the next game to wager on in furtherance of the scheme. For example, on or about February 23, 2024, hours before another Milwaukee Bucks game that would be nationally televised, the defendant ERNESTO PLASCENCIA asked the defendant EDWARD DAVIS when the defendant MALIK BEASLEY would be next fixing his performance. DAVIS responded, "Whenever I say. Just going to chill tonight but after this it's go time." Shortly thereafter, PLASCENCIA relayed his conversation with DAVIS to the defendant WILLIAM

BROWN, adding that, "It's better for it not to be on tv for us."  BROWN responded, "I agree with that."

44.    Prior to the February 27 Game, which would not be nationally televised, the defendant MALIK BEASLEY informed the defendant EDWARD DAVIS that, in the game, BEASLEY intended to underperform with respect to scoring points and overperform with respect to rebounding.  BEASLEY provided this information to DAVIS to obtain a promised bribe payment and for the purpose of enabling DAVIS and other co-conspirators to place wagers based on this non-public information.  DAVIS then disseminated this non-public information to multiple co-conspirators, including the defendants ROBERT GORODETSKY, ERNESTO PLASCENCIA and PAOLO ZAMORANO, to enable them to place fraudulent wagers.

45.    In turn, the defendants and their co-conspirators placed numerous fraudulent wagers totaling tens of thousands of dollars on the defendant MALIK BEASLEY's "under points" and "over rebounds" prop bets.  For example:

(a)    At the direction of the defendant ROBERT GORODETSKY, Co-Conspirator 2 placed multiple bets on BEASLEY's under points and over rebounds on Betting Company 2's mobile application totaling approximately $24,999.88, which profited approximately $77,187.60.

(b)    Upon receiving the non-public information about BEASLEY's anticipated performance from the defendant ERNESTO PLASCENCIA, the defendant WILLIAM BROWN placed two straight bets on BEASLEY's under points on Betting Company 2's mobile application totaling approximately $5,000, which profited approximately $4,166.

(c)    At the direction of the defendant PAOLO ZAMORANO, Co-Conspirator 4 placed (i) a parlay bet on BEASLEY's under points and over rebounds on Betting

11

Company 2's mobile application totaling approximately $5,200, which profited approximately $18,460; and (ii) a straight bet on BEASLEY's under points on Betting Company 2's mobile application totaling approximately $1,000, which profited approximately $769.20.

46.    During the February 27 Game, the defendant MALIK BEASLEY played approximately 26 minutes, scored six points, and recorded four assists and four rebounds. BEASLEY's underperformance in points for the game (six) relative to the betting line (approximately 12.5) and overperformance in rebounds for the game (four) relative to the betting line (approximately 3.5) resulted in the success of numerous fraudulent wagers placed by the co-conspirators.

47.    Thereafter, the defendants and their co-conspirators discussed distributing, and distributed, the proceeds of the fraudulent wagers placed on February 27 Game.   For example:

(a)    The defendant ERNESTO PLASCENCIA texted the defendant PAOLO ZAMORANO that the defendant EDWARD DAVIS was "cleaning up" in profits from the fraudulent bets "and probably giving Malik like 5-8" per game.   ZAMORANO responded: "No question, 5 maybe."   PLASCENCIA replied: "5 that he owes him in interest too."

(b)    PLASCENCIA and DAVIS also discussed PLASCENCIA sending DAVIS proceeds of the fraudulent wagers, totaling approximately $12,000, via cryptocurrency.

C.    The March 10, 2024 Milwaukee Bucks-Los Angeles Clippers Game

48.    On or about March 10, 2024, the Milwaukee Bucks played the Los Angeles Clippers (the "March 10 Game").   Prior to the game, the defendant MALIK BEASLEY informed the defendant EDWARD DAVIS that BEASLEY intended to overperform with respect to rebounding in the game.   BEASLEY provided this information to DAVIS to obtain a

12

promised bribe payment and for the purpose of enabling DAVIS and other co-conspirators to place wagers based on this non-public information.   DAVIS then provided this non-public information to multiple co-conspirators, including the defendants ROBERT GORODETSKY, ERNESTO PLASCENCIA and PAOLO ZAMORANO, to enable them to place the fraudulent wagers.

49.     In turn, the defendants and their co-conspirators placed numerous fraudulent wagers totaling several thousands of dollars on the defendant MALIK BEASLEY's "over rebounds" prop bets.   For example:

(a)     The defendant WILLIAM BROWN placed a straight bet on BEASLEY's over rebounds on Betting Company 1's mobile application totaling approximately $2,838, which profited approximately $3,252.08.

(b)     At the direction of the defendant ROBERT GORODETSKY, Co-Conspirator 3 placed straight bets on BEASLEY's over rebounds on Betting Company 1's and 2's mobile applications totaling approximately $2,400, which profited approximately $2,107.09.

50.     Additionally, due to an apparent miscommunication about the correct BEASLEY prop bet, some of the straw bettors used by Co-Conspirator 1   mistakenly placed wagers on BEASLEY's "under rebounds" prop bets, which bets lost.

51.     During the March 10 Game, the defendant MALIK BEASLEY played approximately 39 minutes, scored 17 points, and recorded one assist and four rebounds. BEASLEY's overperformance in rebounds for the game (four) relative to the betting line (approximately 3.5) resulted in the success of many fraudulent wagers placed by the co-conspirators.

13

52. Notably, the defendant MALIK BEASLEY recorded his fourth (and prop bet winning) rebound in the game's final second at a time when his team led by several points and the game was effectively over. The defendants ERNESTO PLASCENCIA and WILLIAM BROWN contemporaneously discussed via text message BEASLEY's performance in the final seconds:

BROWN: OMGGGGGGGG...HE GOT 1 REB WITH 1.1 second left...FAMMMMMMMMMM...NO WAY...He pushed Connaughton outta the way lmaoooooo

PLASCENCIA: Show me dawg

BROWN: Damn i closed my laptop... I'll try to find it

PLASCENCIA: Ed Wants to see it

. . .

BROWN: Contested it and got the board lol

PLASCENCIA: Bruhhhhh

. . .

BROWN: Fam we were 1.1 secs away from being down thousands lol

PLASCENCIA: What's funny is after he got it he had a big sigh of relief

53. Thereafter, the defendants and their co-conspirators discussed distributing, and distributed, the proceeds of the fraudulent wagers placed on the March 10 Game.

54. Approximately two days after the March 10 Game, the defendants EDWARD DAVIS, ERNESTO PLASCENCIA, PAOLO ZAMORANO and ROBERT GORODETSKY exchanged text messages in a group chat from which DAVIS removed himself mid-conversation:

PLASCENCIA: Ed

DAVIS: Yo

14

PLASCENCIA:  Crazy how Paolo just ruins everything huh… You think he do that on purpose?

ZAMORANO:  I ruined it?  Because I'm betting all the big money huh.  2 dudes in this chat betting 30-40K a game.  Movin the lines and you talking bout what I'm doing.  When the feds come.  Who they going to care about?

. . .

[DAVIS Leaves the Group Chat]

ZAMORANO:  Ed left

GORODETSKY: lol why

ZAMORANO:  To get that off his phone

GORODETSKY. Hahha.  Ed printing

. . .

PLASCENCIA:  Rob you making insane amount stop it.  You move the lines every time

. . .

GORODETSKY: How did paolof[***] it up

PLASCENCIA:  Hasn't paid

E.  The March 21, 2024 Milwaukee Bucks-Brooklyn Nets Game and Collapse of the Scheme

55.    On or about March 21, 2024, the Milwaukee Bucks played the Brooklyn Nets (the "March 21 Game").  Based upon information provided by the defendant EDWARD DAVIS about the defendant MALIK BEASLEY's anticipated performance in the game, the defendants and their co-conspirators placed numerous fraudulent wagers on BEASLEY's "under rebounds" prop bets.  BEASLEY, however, failed to perform in the March 21 Game as planned. As a result, the bets lost.

15

56.     Following the March 21 Game, the defendant ERNESTO PLASCENCIA demanded that the defendant EDWARD DAVIS either compensate the co-conspirators monetarily for their lost bets on the game or arrange for the defendant MALIK BEASLEY to performance fix in future games so that they could place additional fraudulent wagers on his props.   While DAVIS initially agreed to do the latter, following reports that then NBA player Jontay Porter was under investigation in connection with a similar performance fixing scandal, DAVIS backtracked on his promise.

57.     Thereafter, the defendants and their co-conspirators took various steps to further the scheme and to conceal their involvement in it.   Among other things: (a) the defendants ERNESTO PLASCENCIA and PAOLO ZAMORANO discussed circumventing the defendant EDWARD DAVIS and contacting the defendant MALIK BEASLEY directly to solicit his continued participation in the scheme; (b) as discussed with ZAMORANO, PLASCENCIA contacted BEASLEY directly to solicit his continued participation in the scheme; and (c) BEASLEY deleted messages, and DAVIS removed himself from conversations, that evidenced their participation in the scheme.

COUNT ONE
(Conspiracy to Commit Wire Fraud)

58.     The allegations contained in paragraphs one through 57 are realleged and incorporated as if fully set forth in this paragraph.

59.     In or about and between December 2023 and April 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MALIK BEASLEY, also known as "Beas," "Bease," "MB" and "5," WILLIAM BROWN, also known as "Willo," EDWARD DAVIS, also known as "Ed," "ED" and "E Davis," ROBERT GORODETSKY, also known as "Rob," ERNESTO PLASCENCIA, also known as

16

"Ernie," "Erny," "Ernie P" and "Erny P," and PAOLO ZAMORANO, also known as "PZ,"

together with others, did knowingly and intentionally conspire to devise a scheme and artifice to

defraud the Betting Companies, and to obtain money and property from them by means of one or

more materially false and fraudulent pretenses, representations and promises, and for the purpose

of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire

communication in interstate and foreign commerce writings, signs, signals, pictures and sounds,

contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Bribery in Sporting Contests)

60.    The allegations contained in paragraphs one through 57 are realleged and

incorporated as if fully set forth in this paragraph.

61.    In or about and between December 2023 and April 2024, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants MALIK BEASLEY, also known as "Beas," "Bease," "MB" and "5," WILLIAM

BROWN, also known as "Willo," EDWARD DAVIS, also known as "Ed," "ED" and "E Davis,"

ROBERT GORODETSKY, also known as "Rob," ERNESTO PLASCENCIA, also known as

"Ernie," "Erny," "Ernie P" and "Erny P," and PAOLO ZAMORANO, also known as "PZ,"

together with others, did knowingly and willfully carry into effect, attempt to carry into effect

and conspire to carry into effect, a scheme in commerce to influence, in any way, by bribery any

17

sporting contest, with knowledge that the purpose of this scheme was to influence by bribery one or more such contests, to wit: Milwaukee Bucks games during the 2023-2024 NBA season.

(Title 18, United States Code, Sections 224, 2 and 3551 et seq.)

## COUNT THREE
(Honest Services Wire Fraud Conspiracy)

62.     The allegations contained in paragraphs one through 57 are realleged and incorporated as if fully set forth in this paragraph.

63.     In or about and between December 2023 and April 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MALIK BEASLEY, also known as "Beas," "Bease," "MB" and "5," WILLIAM BROWN, also known as "Willo," EDWARD DAVIS, also known as "Ed," "ED" and "E Davis," ROBERT GORODETSKY, also known as "Rob," ERNESTO PLASCENCIA, also known as "Ernie," "Erny," "Ernie P" and "Erny P," and PAOLO ZAMORANO, also known as "PZ," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Milwaukee Bucks and NBA of the intangible right of the honest and faithful services of BEASLEY through bribery, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT FOUR
(Conspiracy to Commit Money Laundering)

64.     The allegations contained in paragraphs one through 57 are realleged and incorporated as if fully set forth in this paragraph.

65.    In or about and between December 2023 and April 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MALIK BEASLEY, also known as "Beas," "Bease," "MB" and "5," WILLIAM BROWN, also known as "Willo," EDWARD DAVIS, also known as "Ed," "ED" and "E Davis," ROBERT GORODETSKY, also known as "Rob," ERNESTO PLASCENCIA, also known as "Ernie," "Erny," "Ernie P" and "Erny P," and PAOLO ZAMORANO, also known as "PZ," together with others, did knowingly and intentionally conspire:

(a)    to conduct one or more financial transactions in and affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, to wit: (i) wire fraud, in violation of Title 18, United States Code, Section 1343 and (ii) sports bribery, in violation of Title 18, United States Code, Section 224, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b)    to conduct one or more financial transactions in and affecting interstate commerce, which transactions in fact involved the proceeds of some form of unlawful activity, to wit: (i) wire fraud, in violation of Title 18, United States Code, Section 1343 and (ii) sports bribery, in violation of Title 18, United States Code, Section 224, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the

19

nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(c)    to engage in one or more monetary transactions in and affecting interstate and foreign commerce, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: (i) wire fraud, in violation of Title 18, United States Code, Section 1343 and (ii) sports bribery, in violation of Title 18, United States Code, Section 224, contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH THREE

66.    The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

67.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

20

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT FOUR

68.    The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

69.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

21

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

/s/
FOREPERSON

By David Pitluck, Assistant U.S. Attorney
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK